**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **FRANK RODRIGUEZ,** | :    **No. 3:10cv2022** |
|         **Plaintiff** | : |
| | :    **(Judge Munley)** |
|     **v.** | : |
| | : |
| **SCRANTON POLICE DEPARTMENT,** | : |
| **DETECTIVE DINA ALBANESI and** | : |
| **KELLY RAFFERTY,** | : |
|         **Defendants** | : |

:::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::

## <u>MEMORANDUM</u>

Before the court are two motions for summary judgment. Defendant Scranton Police Department and Defendant Detective Dina Albanesi (collectively the "Scranton Defendants") filed the first motion. (Doc. 38). Defendant Kelly Rafferty filed the second motion. (Doc. 40). This matter is briefed and ripe for disposition.[1]

---

[1] The court notes that both Plaintiff Frank Rodriguez and Defendant Kelly Rafferty failed to comply with our local rules. Local Rule 56.1 requires, in part, that parties to a motion for summary judgment must file a "separate, short and concise statement of material facts, in numbered paragraphs, as to which the moving party contends there is no genuine issue to be tried" and that "[s]tatements of material facts in support of, or in opposition to, a motion shall include references to the parts of the record that support the statements." L.R. 56.1. Although she filed a separate statement of material facts, Defendant Kelly Rafferty makes **<u>no</u>** citations to the record in that document. (<u>See</u> Doc. 40-1). Plaintiff Frank Rodriguez failed to file separate documents setting forth the material facts. The court also notes that Plaintiff Frank Rodriguez filed two identical briefs in opposition to the Scranton Defendants' motion and two identical briefs in opposition to Defendant Kelly Rafferty's motion. (<u>See</u> Docs. 52, 53, 54, 55). Notwithstanding these violations of our local rules, the court will assess the record as the parties presented it.

**Background**

This civil rights lawsuit arises from the unsuccessful prosecution of Plaintiff Frank Rodriguez (hereinafter "plaintiff") for the alleged sexual assault of Defendant Kelly Rafferty (hereinafter "Rafferty"). The facts relevant to both motions for summary judgment share similarities, thus the court will discuss both motions in this memorandum.

On Sunday November 1, 2009, Rafferty and Jessie Mehaffy, Rafferty's friend and classmate at Marywood University, joined plaintiff for a game of pool at a bowling alley in Scranton, Pennsylvania. (Doc. 54-3, Ex. C, Dep. of Frank Rodriguez (hereinafter "Rodriguez Dep.") at 19-21; Doc. 54-4, Ex. D, Dep. of Kelly Rafferty (hereinafter "Rafferty Dep.") at 11-12; Doc. 54-5, Ex. E, Interview of Jesse Mehaffy (hereinafter "Mehaffy Interview") at 6). While playing pool at the bowling alley, Mehaffy began to feel ill, and Rafferty drove Mehaffy to her dormitory at Marywood University. (Rodriguez Dep. at 20-21; Mehaffy Interview at 11). Prior to leaving the bowling alley, Rafferty and plaintiff agreed that Rafferty would return to plaintiff's apartment. (Rodriguez Dep. at 21; Mehaffy Interview at 11). Because they lived in the same dormitory building, Mehaffy accompanied Rafferty to Rafferty's room, where Rafferty packed an overnight bag. (Mehaffy Interview at 6, 11).

Rafferty returned to the bowling alley, where she met plaintiff and followed him to his apartment. (Rodriguez Dep. at 21; Rafferty Dep. at 51-

2

52).  Some time after 11:00 p.m., plaintiff and Rafferty arrived at plaintiff's apartment.  (Rafferty Dep. at 52).  No one was in the apartment aside from Rafferty and plaintiff.  (Id. at 8; Rodriguez Dep. at 22).  Rafferty and plaintiff had sexual intercourse at some point during the evening.  (Rodriguez Dep. at 22; Rafferty Dep. at 14).  The parties dispute whether the sexual conduct plaintiff and Rafferty engaged in on November 1, 2009 was consensual.  Plaintiff testified that the conduct was consensual and that the pair engaged in sexual intercourse again the next morning.  (Rodriguez Dep. at 22-23).  Rafferty testified that she only had sexual intercourse with plaintiff once and it was against her will.  (Rafferty Dep. at 14-15, 65, 76).  After the sexual encounter, Rafferty stayed overnight.  (Rodriguez Dep. at 23; Rafferty Dep. at 17).  The next morning, plaintiff left for work and Rafferty returned to her dormitory room.[2] (Rodriguez Dep. at 23; Rafferty Dep. at 17).

At some point during the late evening of November 1 or the early morning hours of November 2, Mehaffy received a cell phone text message from Rafferty's cell phone number.  (Rafferty Dep. at 111; Mehaffy

---

[2] The court notes that Rafferty and plaintiff had two relatively brief encounters prior to November 1, 2009.  Rafferty and plaintiff first met when Jessie Mehaffy introduced them at the Colosseum Nightclub on Thursday October 29, 2009.  (Rodriguez Dep. at 11-13; Rafferty Dep. at 10; Mehaffy Interview at 6-7).  Rafferty and plaintiff met one other time on either October 30 or 31 when Rafferty visited plaintiff at plaintiff's apartment for approximately one hour.  (Rodriguez Dep. at 16-17; Rafferty Dep. at 43-44).

3

Interview 11-12). This message allegedly stated that Rafferty had sexual intercourse with plaintiff and that it was "amazing." (Mehaffy Interview 11-12). Rafferty denies ever sending the message. (Rafferty Dep. at 76, 111).

On Wednesday November 4, 2009, Rafferty went to Community Medical Center (hereinafter "CMC") in Scranton, Pennsylvania at the behest of her family doctor. (Rafferty Dep. at 19-20). While at CMC, Rafferty reported that she had been raped on the evening of November 1, 2009. (Id. at 18-20; Doc. 54-2, Ex. B, Scranton PD Incident Report (hereinafter "Incident Report") at 4). The emergency room medical staff instructed Rafferty to return to her dormitory and retrieve the clothes she wore during the alleged sexual assault. (Rafferty Dep. at 20). After Rafferty returned to CMC with her clothing, the medical staff performed a sexual assault forensic evidence examination. (Id. at 20-21).

Scranton Police Officer James Priorielli was dispatched to CMC to speak with Rafferty. (Incident Report at 4). Rafferty disclosed to Officer Priorielli that plaintiff sexually assaulted her in his apartment on the evening of November 1, 2009. (Id.) Rafferty told Officer Priorielli that she rejected plaintiff's advances and that plaintiff forcibly raped her. (Id.) Rafferty described the sexual assault in a handwritten statement as follows:

> Frank (my attacker) and I were alone. He leaned over to kiss me, and I tried politely to tell him I was not interested. I had

hung out with him a few (2) times prior, so at first I did feel safe. But he forced me down onto the floor, and I know I wasn't wearing a belt. He was a lot stronger than I thought. He held me down and pulled my pants down, his knees holding mine. My arms were pinned up over my head. He was saying things like "just enjoy it baby" while I was struggling, telling him no, stop, you are hurting me, etc. I was able to get my right knee up enough to knee him in the ribs/hip. I don't think he used protection and doubt he ejaculated. But once I was able to get him away I just ran away to my car and sped off.

(Doc. 39-1, Ex. B, Kelly Rafferty Written Statement at 2). Rafferty described her alleged attacker as a muscular Hispanic male named Frank. (Incident Report at 4). Prior to leaving the hospital, Officer Priorielli gathered Rafferty's clothes and the sexual assault forensic evidence examination kit so that these items could be placed into evidence. (Id.)

Defendant Detective Dina Albanesi (hereinafter "Albanesi") took over investigation of the case against plaintiff. (Doc. 54-1, Ex. A, Tr. of Dep. of Dina Albanesi (hereinafter "Albanesi Dep.") at 11). Albanesi contacted Rafferty on November 9, 2009, and Rafferty informed Albanesi that she was unsure if she wanted to pursue criminal charges against plaintiff. (Id. at 15; Incident Report at 5). Rafferty later testified that her hesitation to bring charges against plaintiff was, in part, motivated by uncertainty as to what occurred on November 1, 2009. (Rafferty Dep. at 30-31).

On November 12, 2009, Rafferty provided Albanesi with a statement that tracked very closely to the written statement Rafferty provided Officer Priorielli on November 4, 2009. (Incident Report at 6). Rafferty did elaborate in her November 12, 2009 statement that plaintiff attempted to

5

call her on November 2, 2009.  (Id.)  Plaintiff also told Albanesi that she

exchanged text messages with plaintiff on November 2, in which Rafferty

told plaintiff, "what you did was wrong."  (Id.)

Albanesi enlisted the help of Detective Vince Uher to conduct a

consensual phone intercept of a conversation between plaintiff and

Rafferty.  (Incident Report at 5). Rafferty consented to the phone intercept,

and on November 13, 2009, the police recorded three calls Rafferty made

to plaintiff's number.  (Id.)  There was no answer to the first and second

calls.  (Id.)  Plaintiff answered Rafferty's third call, and they spoke for

approximately thirteen minutes.  (Id.)  Albanesi summarized the content of

plaintiff and Rafferty's conversation as follows in the official incident report:

"On the phone the suspect stated he was sorry, it was in the heat of the

moment."[3]  (Incident Report at 7).

On November 30, 2009, Albanesi met with Lackawanna County

Assistant District Attorney Mariclare Hayes (hereinafter "ADA Hayes").

(Incident Report at 7).  At this meeting, Albanesi and ADA Hayes reviewed

---

[3] Although the conversation between plaintiff and Rafferty is not
transcribed, plaintiff nonetheless provided the court with an audio copy of
the recordings made during the consensual phone intercepts.  (See Doc.
54, Ex. I, DVD+R Audio Recording).  In this conversation, plaintiff states
that the parties' conduct on November 1, 2009 was spontaneous, that he
was sorry to the extent that he did anything wrong, and that he did not
believe he forced Rafferty to do anything.  Thus, when it is heard in
context, plaintiff's apology is ambiguous and not an obvious admission of
guilt.

the evidence against plaintiff, specifically the statements Rafferty gave to the police on November 4 and 12 and the consensual phone intercepts. (Id.; Doc. 54-7, Ex. F, Dep. of Mariclare Hayes, Esq. (hereinafter "Hayes Dep.") at 15). ADA Hayes found Rafferty's statements up until that point to be consistent. (Hayes Dep. at 12, 17). Moreover, ADA Hayes stated at her deposition that she found the consensual wire audio recording to be "persuasive at the time" even though the discussion lacked details. (Id. at 13). Based upon this evidence, ADA Hayes was satisfied that probable cause existed for an arrest. (Id. at 15-16). ADA Hayes made the final decision to file charges against plaintiff. (Id. at 14).

ADA Hayes approved a criminal complaint against plaintiff on December 1, 2009. (Hayes Dep. at 14; Doc. 54-8, Ex. H, Police Criminal Compl. at 1). The criminal complaint charged plaintiff with four crimes: rape, aggravated indecent assault, indecent assault, and unlawful restraint. (Doc. 54-8, Ex. H, Police Criminal Compl. at 3-4). Albanesi was the affiant on the criminal complaint, in which she provided a summary of the narrative Rafferty provided the police on November 4, 2009. (Id. at 5). The affidavit of probable cause also states that "[a]s a part of the investigation it was found that Frank Rodriguez lives at 1725 Farr St, fits the description of the accused and works at Redners." (Id.) The affidavit of probable cause was approved by District Justice Terrence Gallagher. (See Doc. 39, Scranton Defs.' Statement of Undisputed Material Facts at

5; Doc. 39-1, Ex. C, Police Criminal Compl. at 5)

On December 1, 2009, Albanesi and another Scranton Police Department officer went to Redner's grocery store and arrested plaintiff. (Incident Report at 8).  The officers took plaintiff to police headquarters, where he signed a waiver of right to counsel and Albanesi interrogated him.  (Id.; Albanesi Dep. at 26-27; Rodriguez Dep. at 33-34).  Plaintiff gave a statement to the police, which is summarized in the official incident report as follows:

> He stated that he did not force the victim to have sex.  She had sex willingly.  He stated that she stayed at his house the entire night, and left him a note saying what a good time she had.  He stated that they had oral sex, and consensual sex.

(Incident Report at 8).  Albanesi called plaintiff a "liar" in response to his denials.[4]  (Albanesi Dep. at 27; Rodriguez Dep. at 33).  Plaintiff's denials of any wrongdoing were adamant, and he requested that Albanesi subject him to a lie detector test.  (Albanesi Dep. at 28-29; Rodriguez Dep. at 35). After her interrogation of plaintiff, Albanesi contacted Rafferty.  (Incident Report at 8).  Rafferty told Albanesi that she left plaintiff a note during her first visit to his apartment on October 30 or 31, not on the evening of the alleged sexual assault.  (Id.)

_____

[4] Plaintiff asserts that Albanesi "talked tough" to him during the interrogation by wishing him good luck in jail and stating that,  "[j]ails in the United States are not too bad.  I don't know in your country."  (Rodriguez Dep. at 33).  Albanesi disputes making such statements to plaintiff. (Albanesi Dep. at 26-28).

On December 9, 2009, a preliminary hearing was held before District Magistrate Judge Alyce Farrell. (Doc. 39-2, Ex. D, Tr. of Prelim. Hearing). Rafferty testified, under oath, that on the evening of November 1, 2009, she went to plaintiff's apartment with Mehaffy and spent time there with plaintiff, Mehaffy and three other unidentified males. (Id. at 7, 33). Rafferty's testimony regarding the details of the alleged sexual assault tracked closely to the description she provided for the police on November 4, 2009. (See id. at 12-14). Rafferty testified that plaintiff began kissing her against her will, forced her to the ground, removed her clothing, had sexual intercourse with her, and stopped only after she told him to stop and pushed him with her leg. (Id.) The Honorable Alyce Farrell found the evidence sufficient to bind the case for trial. (Id. at 59).

Rafferty, however, has subsequently admitted that her testimony at the preliminary hearing was inaccurate. On March 12, 2010, Rafferty told ADA Hayes and Albanesi that she was initially confused when it came to some of the details surrounding the alleged sexual assault, and that she did not visit plaintiff's apartment on November 1, 2009 with Mehaffy and three unidentified males.[5] (Incident Report at 9). Despite Rafferty's

---

[5] Albanesi recorded her March 12, 2010 interview with plaintiff as follows:

> [Rafferty] stated she was mixed up when she gave her first statement to me. She stated she met with Rodriguez three times. The last time she went to his residence alone. She

9

revelation that she presented a confused version of the facts at the preliminary hearing, Albanesi and ADA Hayes decided to continue with plaintiff's prosecution.  (Albanesi Dep. at 32).

On or around March 13, 2010, Albanesi interviewed Jessie Mehaffy. (Mehaffy Interview at 4).  Mehaffy told Albanesi that Rafferty had asked her to tell the police that she was at plaintiff's apartment with Rafferty before the alleged sexual assault.[6]  (Albanesi Dep. at 8; Mehaffy Interview at 23-24).  Albanesi and ADA Hayes interviewed Rafferty again in late March 2010, and Rafferty revealed that she had stayed at plaintiff's apartment throughout the night and did not leave until the next morning.  (Albanesi

_____

> stated that he did rape her but she was very upset and through therapy found that she was mixed up on the things that led up tp [sic] the rape.  She stated she went to his residence.  They went into his bedroom and watched videos through Rodriguez's phone.  They kissed but when he tried to go farther she told him to stop.  When the rape occurred she stated she believes she told him to stop but at the end of the rape he did place his penis in her mouth and ejaculate [sic].  She stated she did not say this before because she never did it before and wasn't sure if that was oral sex or not.

(Incident Report at 9).

[6] Rafferty disputes that she ever asked Jesse Mehaffy to lie to the police; however, Rafferty admitted  to telling Mehaffy that, in her statement to the police, she stated that Mehaffy was present at plaintiff's apartment prior to the alleged sexual assault.  (Rafferty Dep. at 113-14).  Rafferty also admits informing Mehaffy that she provided the police with Mehaffy's name.  (Id. at 113).

Dep. at 32-33; Hayes Dep. at 19). In light of these developments ADA

Hayes moved to *nolle prosse* the charges filed against plaintiff.[7] (Doc. 54-

7, Ex. G, Commonwealth's Petition for *Nolle Prosse*). The petition to *nolle*

*prosse* the charges against plaintiff stated:

> 9. Throughout the investigation, the Commonwealth has discovered various inconsistencies from the victim's statements given both prior to and at the time of the Preliminary Hearing;
>
> 10. The Commonwealth met with the victim most recently on Thursday, March 25, 2010, to again discuss possible inconsistencies in her statements;
>
> 11. Detective Dina Albanesi, the Affiant in this matter, continued her investigation following the March 25, 2010, meeting and discovered further inconsistencies in the victim's

_____

[7] At her deposition, Albanesi stated that there were two factors contributing to the Commonwealth's decision to drop the case against plaintiff. (Albanesi Dep. at 7-8). The first factor was Albanesi's March 2010 interview with Jesse Mehaffy in which Mehaffy stated that Rafferty asked her to tell the police that she was present at plaintiff's apartment on November 1, 2009. (Id. at 8). Albanesi recalled that the second factor that led to the dismissal of the case was Rafferty's revelation in March 2010 that she actually spent the night at plaintiff's apartment. (Id.) Albanesi also stated at her deposition that she would have confronted Rafferty with Mehaffy's statements earlier if Mehaffy had been interviewed by the police before March 12, 2010. (Id. at 35).

At her deposition, ADA Hayes stated that the charges against plaintiff were dropped because "virtually all of the surrounding circumstances" of Rafferty's account of the alleged sexual assault had changed. (Hayes Dep. at 18). ADA Hayes lists two specific changes in Rafferty's story that led to her decision to drop the charges: (1) the fact that no one else was present in plaintiff's apartment on the night of the incident, and (2) the fact that Rafferty spent the night at plaintiff's apartment after the alleged sexual assault. (Id. at 18-19).

statements;

12. The Commonwealth and the Affiant again met with the victim on Monday, March 29, 2010, to discuss these additional inconsistencies;

13. While the victim has not recanted her statements regarding the actual sexual assault, the surrounding circumstances have varied significantly from the initial report upon which the Commonwealth based the charges in this matter;

14. These inconsistencies now present the Commonwealth with an insurmountable obstacle in proving these charges beyond a reasonable doubt;

15. Therefore, the Commonwealth believes that these charges should be withdrawn;

(Id.) The court granted the Commonwealth's petition on March 29, 2010.

(Id.) Plaintiff was released from Lackawanna County Jail at the end of April, after a period of approximately five months.[8] (Rodriguez Dep. at 38).

On September 29, 2010, plaintiff initiated the instant civil rights complaint. (Doc. 1, Compl.). Plaintiff filed an amended two-count complaint on January 14, 2011. (Doc. 13, Am Compl.). Count I alleges a violation of 42 U.S.C. § 1983 against all defendants for alleged violations of plaintiff's Fourth and Fourteenth Amendment rights. (Id. ¶¶ 30-35). Count II alleges that all of the defendants are liable to plaintiff for the state law causes of action of (1) false imprisonment, (2) intentional infliction of

---

[8] It appears that plaintiff was held in Lackawanna County Jail for approximately a month after the criminal case against him was dismissed because of an outstanding immigration detainer. (Rodriguez Dep. at 38).

emotional distress, (3) interference with state and constitutional rights, (4) negligence, (5) gross negligence, and (6) negligent hiring, training, retention and supervision.  (Id. ¶¶ 36-38).  Defendants answered plaintiff's complaint, and the parties pursued discovery for approximately eight months.  At the close of discovery, Scranton Defendants and Rafferty filed separate motions for summary judgment, (Docs. 38, 40), bringing this case to its current posture.

**Jurisdiction**

Plaintiff asserts civil rights claims under 42 U.S.C. § 1983 (hereinafter "section 1983").  The court has jurisdiction pursuant to 28 U.S.C. § 1331, which provides that "[t]he district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States."  The court has jurisdiction over plaintiff's state law claims pursuant to 28 U.S.C. § 1367(a) ("[I]n any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.").

**Standard of Review**

Granting summary judgment is proper "'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the

affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.'" See Knabe v. Boury Corp., 114 F.3d 407, 410 n.4 (3d Cir. 1997) (quoting FED. R. CIV. P. 56(c)).  "[T]his standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986) (emphasis in original).

        In considering a motion for summary judgment, the court must examine the facts in the light most favorable to the party opposing the motion.  Int'l Raw Materials, Ltd. v. Stauffer Chem. Co., 898 F.2d 946, 949 (3d Cir. 1990).  The burden is on the moving party to demonstrate that the evidence is such that a reasonable jury could not return a verdict for the non-moving party.  Anderson, 477 U.S. at 248.  A fact is material when it might affect the outcome of the suit under the governing law.  Id.  Where the non-moving party will bear the burden of proof at trial, the party moving for summary judgment may meet its burden by establishing that the evidentiary materials of record, if reduced to admissible evidence, would be insufficient to carry the nonmovant's burden of proof at trial.  Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).  Once the moving party satisfies its burden, the burden shifts to the non-moving party, who must go beyond its pleadings, and designate specific facts by the use of affidavits,

14

depositions, admissions, or answers to interrogatories demonstrating a genuine issue for trial. <u>Id.</u> at 324; <u>see also</u> <u>Goode v. Nash</u>, 241 F. App'x 868 (3d Cir. 2007) ("[A]lthough the party opposing summary judgment is entitled to 'the benefit of all factual inferences in the court's consideration of a motion for summary judgment, the nonmofving party must point to some evidence in the record that creates a genuine issue of material fact,' and 'cannot rest solely on assertions made in the pleadings, legal memorandum, or oral argument.'" (quoting <u>Berckeley Inv. Grp., Ltd. v. Colkitt</u>, 455 F.3d 195, 201 (3d Cir. 2006))).

**Discussion**

Scranton Defendants and Rafferty filed separate motions for summary judgment. The court will first address Scranton Defendants' motion for summary judgment. Next, the court will discuss Rafferty's motion for summary judgment. As will be fully explained below, the court agrees with the Scranton Defendants and Rafferty that summary judgment is appropriate with respect to plaintiff's federal law claims. Accordingly, the court will decline to exercise supplemental jurisdiction over plaintiff's state law claims and grant defendants' summary judgment motions.

**A. Scranton Defendants Motion for Summary Judgment**

Scranton Defendants move for summary judgment on all claims alleged in the complaint. Scranton Defendants present four arguments in favor of their motion for summary judgment. First, they contend that

probable cause existed to arrest plaintiff.  Second, Scranton defendants assert that Albanesi is entitled to qualified immunity.  Third, they argue that the municipal liability claim against the Scranton Police Department fails in the absence of a genuine issue of material fact.  Fourth, Scranton Defendants aver that they are entitled to summary judgment on plaintiff's state law claims as a matter of law.  Plaintiff disputes Scranton Defendants' contentions and maintains that genuine issues of material fact exist with regard to his claims against Scranton Defendants.  The court will assess Scranton Defendants' federal law arguments in turn.

### 1.  Probable Cause

Scranton Defendants first argue that they are entitled to summary judgment on plaintiff's civil rights claims because Albanesi possessed probable cause to arrest plaintiff.  The majority of plaintiff's cognizable federal claims against Scranton Defendants depend upon his assertion that Albanesi conducted a constitutionally deficient investigation and therefore lacked probable cause in violation of the Fourth Amendment.[9]

---

[9] Plaintiff alleges as follows regarding his section 1983 claim:

As a direct and proximate result of the conduct of Detective Dina Albanesi, committed under color of state law, Defendant Albanesi, or Defendants deprived Plaintiff of his right [sic], privileges and immunities under the laws of the Constitution of the United States; Plaintiff's right to be free from unreasonable searches and seizures, false arrest, false imprisonment, verbal abuse, to be secure in one's person and property, and to due process and equal protection of law.  As a result Plaintiff

16

The Fourth Amendment provides that "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause . . . ." U.S. CONST. amend. IV.  It is settled law that the Fourth Amendment "prohibits a police officer from arresting a citizen except upon probable cause." Orsatti v. N.J. State Police, 71 F.3d 480, 482 (3d Cir. 1995) (citing Papachristou v. City of Jacksonville, 405 U.S. 156, 169 (1972)).

The Third Circuit Court of Appeals has found that "[p]robable cause is a fluid concept" that turns on "the assessment of probabilities in particular factual contexts–not readily, or even usefully, reduced to a neat set of legal rules." United States v. Shields, 458 F.3d 269, 277 (3d Cir. 2006) (citing Illinois v. Gates, 462 U.S. 213, 232 (1983)).  Although no precise definition for probable cause exists, the Supreme Court has

---

suffered and continues to suffer harm in violation of Plaintiff's rights under the laws and Constitution of the United States, in particular, the Fourth and Fourteenth Amendments thereof, and 42 U.S.C. § 1983.

(Doc. 13, Am. Compl. ¶ 31).  A review of the record reveals that plaintiff's federal claims against Albanesi rest on the contention that she arrested and imprisoned him without probable cause in violation of the Fourth Amendment as applied to state officials by the Fourteenth Amendment. Plaintiff has failed to present a genuine issue of material fact with respect to an independent due process or equal protection claim.  Plaintiff also raises a civil rights claim for "verbal abuse."  He has cited to no authority that supports such a claim.

explained that police officers possess sufficient probable cause when (1) there is a reasonable ground for belief of guilt determined from the totality of the circumstances, and (2) the belief of guilt is particularized with respect to the individual searched or seized.  See Maryland v. Pringle, 540 U.S. 366, 371 (2003).

The Third Circuit Court of Appeals has explained that, "[p]robable cause to arrest exists when the facts and circumstances within the arresting officer's knowledge are sufficient in themselves to warrant a reasonable person to believe that the offense has been or is being committed by the person to be arrested."  Orsatti, 71 F.3d at 483; see also Wilson v. Russo, 212 F.3d 781, 789 (3d Cir. 2000) ("Probable cause exists if there is a 'fair probability' that the person committed the crime at issue." (citation omitted)); Dowling v. City of Phila., 855 F.2d 136, 141 (3d Cir.1988) ("The proper inquiry in a section 1983 claim based on false arrest . . . is not whether the person arrested in fact committed the offense but whether the arresting officers had probable cause to believe the person arrested had committed the offense.").  As a general principle, the complaining witness's statement and positive identification of the suspect is sufficient to support probable cause; however, this precept is not absolute, and independent exculpatory evidence or evidence of the victim's unreliability can serve to negate probable cause.  See Wilson, 212 F.3d at 790.

In the instant case, plaintiff's section 1983 claim against Albanesi turns on his assertion that she acted without probable cause on December 1, 2009. On this day, Albanesi drafted the affidavit of probable cause and arrested plaintiff.[10] As the court explains below, no reasonable jury could find that Albanesi acted without probable cause on December 1, 2009 because the record is devoid of genuine material facts to support such a finding.

The evidence within Albanesi's knowledge at the time she arrested plaintiff was sufficient for a reasonable person to believe that plaintiff sexually assaulted Rafferty. Rafferty, the alleged victim and sole witness, besides plaintiff, to the alleged sexual assault, provided the police with two consistent statements. She gave the first statement on November 4, 2009 to Officer James Priorielli fewer than three days after the alleged assault. Rafferty described both verbally and in writing how her attacker, whom she

---

[10] The court notes that the affidavit of probable cause was approved by ADA Hayes and District Justice Terrence Gallagher on December 1, 2010. (See Doc. 39-1, Ex. C, Police Criminal Compl. at 5). Although a magistrate approved Albanesi's affidavit of probable cause, the record does not indicate whether Albanesi obtained an arrest warrant prior to taking plaintiff into custody. Scranton Defendants' statement of material facts is silent with respect to the issuance of an arrest warrant, and no arrest warrant is attached as an exhibit. Accordingly, the court will not assess whether plaintiff satisfied the heightened standard required to establish a false arrest claim for arrests made pursuant to a warrant. See Wilson, 212 F.3d at 786. Rather, the court will assess whether a genuine issue of material fact exists with respect to whether Albanesi possessed probable cause at the time she arrested plaintiff.

described as a Hispanic man named Frank, forcibly raped her prior to her escape from his apartment.  On November 12, 2009, Rafferty provided another, consistent statement to Albanesi.  Furthermore, on November 13, 2009, Albanesi, Detective Uher and Rafferty recorded Rafferty's telephone conversation with plaintiff, in which plaintiff provided several ambiguous statements.  Some of the ambiguous statements plaintiff provided, such as his apology for any wrong he may have committed, could be construed as inculpatory; however, no direct exculpatory evidence resulted from this contact.  The record indicates that Albanesi had yet to discover exculpatory evidence after an investigation that lasted nearly a month. In light of the evidence Albanesi knew of at the time plaintiff was arrested, the court finds that Albanesi's belief in plaintiff's guilt was particularized and reasonable.

Moreover, the court's conclusion that Albanesi acted with probable cause is confirmed by the fact that District Magistrate Alyce Farrell, a neutral magistrate, found there to be enough evidence to bind the case over for trial.  District Magistrate Farrell listened to Rafferty's testimony at a December 9, 2009 preliminary hearing.  Based on Rafferty's testimony, which tracked closely to her earlier statements, District Magistrate Farrell found that the case should be bound for trial.  District Magistrate Farrell's conclusion that the state established a prima facie case requires a greater quantum of proof than the probable cause standard with which Albanesi is judged.  See Stewart v. Abraham, 275 F.3d 220, 229 (3d Cir. 2001) (noting

that "prima facie" and "probable cause" are not synonymous because the "prima facie case standard was not intended to require different and greater assurances of guilt"); Domenech v. City of Phila., No. 06-1325, 2009 WL 1109316, at *10 (E.D. Pa. Apr. 23, 2009) ("The District Attorney made an independent judgment that probable cause existed, and this judgment was buttressed when the Municipal Court found a *prima facie* case and held Plaintiffs for trial.").

The court's determination with respect to whether Albanesi possessed sufficient probable cause is analogous to other cases in our judicial circuit in which the courts assessed whether the testimony of one complaining witness was sufficient, as a matter of law, to establish probable cause in the absence of exculpatory evidence. In Bresko v. John, the Third Circuit Court of Appeals found that a detective possessed sufficient probable cause to obtain a search warrant when the detective received detailed information from the victim regarding her alleged rapist. 87 F. App'x 800, 802 (3d Cir. 2004). In the absence of any indication of official misconduct, the Third Circuit rejected plaintiff's contention that the detective was required to conduct a greater investigation prior to applying for an arrest warrant. Id.

In another case involving the issue of whether the police possessed probable cause to arrest a rape suspect, a court sitting in this judicial district found that, generally, the complaining witness's statement to the

police supported the conclusion that the police acted with probable cause. Scott v. Marshall, No. 4:CV-09-1989, 2011 WL 2682819, at *9-10 (M.D. Pa. July 11, 2009).  The court in Scott recognized an exception to this general rule when "the arresting officer knows about '[i]ndependent exculpatory evidence or substantial evidence of the witnesses unreliability' that could outweigh what the complaining witness said."  Id. at *9 (quoting Wilson, 212 F.3d at 790).  Absent any exculpatory evidence or evidence of witness unreliability, the court found that the information supplied by the complaining witness was sufficient to support probable cause to arrest the suspect for sexual assault.  Id. at *9-10.  Like the courts in Bresko and Scott, the court finds that the information Rafferty provided Albanesi, in the absence of exculpatory evidence or substantial evidence of Rafferty's unreliability, sufficiently established probable cause as a matter of law.

The court disagrees with plaintiff that Albanesi's lacked probable cause because of an insufficient investigation.  Plaintiff attempts to manufacture a genuine issue of material fact by pointing to the following four facts: "[1] There was no forensic evidence to support the claim of rape. [2] The consensual wiretap did not support a claim of rape.  [3] No eyewitness supported a claim of rape.  [4] The one person identified as being present with the victim and her rapist was never contacted."  (Doc. 55, Pl.'s Br. in Opp'n to Scranton Defs.' Mot. for Summ. J. at 8).  With respect to the first and third facts plaintiff points to, the court finds that the

22

mere absence of specific types of incriminating evidence, such as forensic evidence or third-party eyewitnesses, does not negate the probable cause established by other types of incriminating evidence. Additionally, regarding the second fact plaintiff cites, the court further finds, as is mentioned above, that the recording from the consensual wire tap is, at best, ambiguous.[11]

Moreover, the court is unpersuaded by plaintiff's final point, that Albanesi's failure to contact Mehaffey earlier in the investigation demonstrates her lack of probable cause. Albanesi did not know that Mehaffey would provide substantial evidence of Rafferty's unreliability at the time she drafted the affidavit of probable cause. When Albanesi drafted the affidavit of probable cause, Rafferty had only provided the police with consistent accounts of the alleged sexual assault. In light of the

_____

[11] Plaintiff alleges that Albanesi intentionally withheld mention of the consensual wire tap from the affidavit of probable cause because it was exculpatory and that its inclusion would have negated probable cause. As is noted above, the recorded phone conversation is ambiguous and difficult to understand. No reasonable jury could find that Albanesi viewed this recording as exculpatory at the time she drafted the affidavit of probable cause. Furthermore, the court notes that plaintiff's assertion that this case is like the Eighth Circuit case of Kuehl v. Burtis, 173 F.3d 646 (8th Cir. 1999) is not convincing. In Kuehl, the investigators did not conduct a minimally sufficient investigation because they ignored plainly exculpatory evidence and refused to interview an eyewitness to the alleged crime. Id. at 651. In the instant case, plaintiff can identify no such "plainly exculpatory evidence" that Albanesi ignored, and there were no other eyewitnesses to this alleged crime.

23

information Albanesi had on December 1, 2009, it would appear that Mehaffey could, at best, provide investigators with marginally relevant background information, not evidence concerning the commission of the alleged offense.  The Fourth Amendment does not require that the police serve as inquisitors and question every marginally relevant witness in search of evidence of unreliability.

Accordingly, the court finds that the Scranton Defendants established that the evidence is such that no reasonable jury could find that Albanesi lacked probable cause, and plaintiff failed to demonstrate that a genuine issue of material facts exists with respect to this point.  As such, the federal law claims against Albanesi in Count I fail as a matter of law.  Given this conclusion, the court need not address the Scranton Defendants' argument in the alternative for qualified immunity.  See Saucier v. Katz, 533 U.S. 194, 201 (2001) ("[i]f no constitutional right would have been violated were the allegations established, there is no necessity for further inquiries concerning qualified immunity.").

### 2. Municipal Liability Against the Scranton Defendants

The court will also grant summary judgment with respect to plaintiff's municipal liability claims against the Scranton Defendants.  Plaintiff asserts civil rights claims against the Scranton Police Department pursuant to Monell v. Dep't of Soc. Servs. of N.Y.C., 436 U.S. 658 (1978).  Under Monell, section 1983 civil rights claims cannot be maintained against

24

municipalities on the theory of respondeat superior.  Monell, 436 U.S. at

694.  Rather, the Supreme Court ruled that a government is only liable

under section 1983 when the "execution of a government's policy or

custom, whether made by its lawmakers or by those whose edicts or acts

may fairly be said to represent official policy, inflicts the injury . . . ."  Id.

Courts have clarified that municipalities can be liable under section

1983 for the civil rights violations of its employees in the three situations:

> First, the municipality will be liable if its employee acted
> pursuant to a formal government policy or a standard operating
> procedure long accepted within the government entity, Jett v.
> Dallas Independent School District, 491 U.S. 701, 737, 109 S.
> Ct. 2702, 105 L. Ed. 2d 598 (1989); second, liability will attach
> when the individual has policy making authority rendering his or
> her behavior an act of official government policy, Pembaur v.
> City of Cincinnati, 475 U.S. 469, 480-81, 106 S. Ct. 1292, 89 L.
> Ed. 2d 452 (1986); third, the municipality will be liable if an
> official with authority has ratified the unconstitutional actions of
> a subordinate, rendering such behavior official for liability
> purposes, City of St. Louis v. Praprotnik, 485 U.S. 112, 127,
> 108 S. Ct. 915, 99 L. Ed. 2d 107 (1988).

McGreevy v. Stroup, 413 F.3d 359, 367 (3d Cir. 2005).

In the instant case, plaintiff's Monell claim fails as a matter of law

because, as is discussed at length above, no triable material facts can be

found in the record with respect to whether plaintiff's civil rights were

violated.  See Startzell v. City of Phila., 533 F.3d 183, 204 (3d Cir. 2008)

("Because we have found that there was no violation of Appellants'

constitutional rights, we need not reach the claim against the City under

Monell.").  Accordingly, the court will grant Scranton Defendant's motion for

25

summary judgment with respect to the <u>Monell</u> claims.

## B. Defendant Kelly Rafferty's Motion for Summary Judgment

Defendant Rafferty maintains that, as a private citizen, she does not qualify as a state actor for the purposes of section 1983 and that plaintiff's federal claims accordingly fail with respect to her.    Section 1983 provides as follows:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured . . . .

42 U.S.C. § 1983.  The statutory language of section 1983 clearly limits liability to those acting under the color of state law.  <u>See</u> <u>Miller v. Mitchell</u>, 598 F.3d 139, 147 (3d Cir. 2010).

A defendant need not be an officer of the state, however, to act under state law.  Private individuals can be viewed as acting under the color of state law and held liable under section 1983 in certain circumstances.  The United States Supreme Court has found that "[p]rivate persons, jointly engaged with state officials in the challenged action, are acting 'under color' of law for purposes of § 1983 actions."  <u>Dennis v. Sparks</u>, 449 U.S. 24, 27-28 (1980) (citing <u>Adickes v. S.H. Kress & Co.</u>, 398 U.S. 144, 152 (1970)).  To succeed in a section 1983 claim against a private individual, however, the plaintiff must prove that the private

individuals was a "willful participant in joint action with the State or its agents." Id. at 27.

In section 1983 cases against private individuals, "[t]he 'inquiry must be whether there is a sufficiently close nexus between the state and the challenged action of the . . . entity so that the action of the latter may be fairly treated as that of the State itself.'" Martin v. Lakewood Police Dep't, 266 F. App'x 173, 176 (3d Cir. 2008) (quoting Jackson v. Metro. Edison Co., 419 U.S. 345, 351 (1974)). The plaintiff can prove such a nexus by establishing the elements of a civil conspiracy between a state and private actor to violate an individual's rights. Melo v. Hafer, 912 F.2d 628, 638 (3d Cir. 1990) (citations omitted). Establishing a civil conspiracy is a common, but not the exclusive means by which the plaintiff can establish joint action. See Koehler ex rel. Koehler v. Juniata Cnty. Sch. Dist., No. 1:07-CV-0117, 2008 WL 1787632, at *10 (M.D. Pa. Apr. 17, 2008); Smith v. Wambaugh, 29 F. Supp. 2d 222, 227 (M.D. Pa. 1998).

In the instant case, plaintiff argues that there are two grounds upon which the court could find that Rafferty is liable under section 1983. Plaintiff first asserts that Rafferty is liable under section 1983 as a private individual because she conspired with Albanesi. Generally, "[t]o demonstrate a conspiracy under § 1983, a plaintiff must show that two or more conspirators reached an agreement to deprive him or her of a constitutional right 'under color of state law.'" Parkway Garage, Inc. v. City

of Phila., 5 F.3d 685, 700 (3d Cir. 1993) (quoting Adickes, 398 U.S. at 150).  More specifically, to assert a conspiracy under section 1983, a plaintiff must establish the elements of a state law civil conspiracy claim. Ammlung v. City of Chester, 494 F.2d 811, 814 (3d Cir. 1974) (relying on Pennsylvania civil conspiracy law to set forth the elements).  In Pennsylvania, "[t]he essential elements of a claim for civil conspiracy are as follows: (1) a combination of two or more persons acting with a common purpose to do an unlawful act or to do a lawful act by unlawful means or for an unlawful purpose, (2) an overt act done in pursuance of the common purpose, and (3) actual legal damage."  Phillips v. Selig, 959 A.2d 420, 437 (Pa. Super. Ct. 2008).  Thus, "'absent a civil cause of action for a particular act, there can be no cause of action for civil conspiracy to commit that act.'"  Id. (quoting McKeeman v. Corestates Bank, N.A., 751 A.2d 655, 660 (Pa. Super. Ct. 2000)).

Plaintiff's conspiracy argument largely rests on his characterization of the consensual phone recording.  The totality of plaintiff's conspiracy argument is as follows:

> Defendant Albanesi and Defendant Rafferty decided together to place a phone call to Plaintiff in which Defendant Rafferty would attempt to extract information from Plaintiff for Defendant Rafferty to use in bringing charges.  This joint action by Defendants Rafferty and Albanesi would be sufficient for the jury to infer a conspiracy between the two.

(Doc. 54, Pl.'s Br. in Opp'n to Def. Rafferty's Mot. for Summ. J. at 9).

The court disagrees.  As is discussed above, no triable issue of fact

28

exists with respect to whether Albanesi violated plaintiff's constitutional rights. Thus, plaintiff's civil conspiracy claim fails as a matter of law absent any evidence that Albanesi, one of the alleged co-conspirators, acted, or even intended to act, to violated plaintiff's civil rights. See Phillips, 959 A.2d at 437. Although Rafferty and Albanesi agreed to gather evidence against plaintiff by means of a consensual telephone recording, no evidence of record indicates that they agreed or acted with an unlawful purpose. Therefore, plaintiff cannot establish the elements needed to prove a civil conspiracy in Pennsylvania.

Plaintiff alternatively argues that Rafferty is subject to section 1983 liability because Rafferty and Albanesi engaged in joint activity in which Rafferty assisted the police and took an active role in the fact gathering. Plaintiff asserts that "Rafferty's actions went above and beyond the point of providing information to the level of willful participation with law enforcement" because she placed a phone call to plaintiff to obtain information, "which she knew to be false." (Doc. 54, Pl.'s Br. in Opp'n to Def. Rafferty's Mot. for Summ. J. at 9). Plaintiff characterizes Rafferty's activities in this case as being akin to conducting surveillance and hiring private investigators.

Plaintiff overstates his case. When the evidence is viewed in the light most favorable to plaintiff, and all reasonable inferences are drawn in his favor, the court finds no genuine issue of material fact with respect to

whether a sufficient nexus exists between Rafferty and a state actor to subject her to section 1983 liability.  First, the court notes that the cases upon which plaintiff relies are factually distinguishable and apply a different standard of review.[12]

Second, the court finds no material facts to support plaintiff's assertion that the nexus between Rafferty's action and the state is such that Rafferty's conduct can be treated as that of the state.  It is undisputed

───────────────────

[12] Plaintiff maintains that two cases, Hughes v. Patrolmen's Benevolent Ass'n of N.Y.C., Inc., 850 F.2d 876 (2d Cir. 1988) and Auster Oil & Gas, Inc. v. Stream, 764 F.2d 381 (5th Cir. 1985), support his argument that a genuine issue of material fact exists with respect to Rafferty's liability under section 1983.  The court does not find these cases to be analogous to the instant matter.  In Hughes, the court merely evaluated the complaint to determine whether it sufficiently alleged a conspiracy between a private party and state actor to deprive the plaintiff of civil rights.  Hughes, 850 F.2d at 880-81.  The court found that the complaint sufficiently alleged a civil conspiracy and a claim under section 1983 against a private entity, in part, because it alleged that the private entity hired private detectives to surveil plaintiff with the consent of state actors.  Id. at 881.  In the instant case, the court must evaluate defendants' motions under the summary judgment standard of review, not the standard applicable for motions to dismiss.  Moreover, the court notes that plaintiff has not presented evidence that Rafferty somehow violated plaintiff's rights with the consent of the police.

In Stream, the court, again evaluating the case under the less stringent motion to dismiss standard, found that the complaint sufficiently alleged that the private actors and the police acted in concert when they allegedly plotted to violate plaintiff's rights.  Stream, 764 F.2d at 382.  No such evidence exists in the record of the instant case, and no reasonable jury could conclude that Rafferty and Albanesi jointly planned to violate plaintiff's rights.

that Rafferty misled the police and testified falsely before a magistrate. However, lying to the police while simultaneously cooperating with an investigation is not enough to subject a private individual to section 1983 liability. See Scott, 2011 WL 2682819, at *14. The plaintiff in Scott, like the plaintiff in the instant case, initiated a section 1983 action against a private citizen for alleged damages arising from a failed sexual assault prosecution. Id. at *1. The alleged rape victim in Scott provided misleading statements regarding her sexual encounter with plaintiff to the police. Id. at *6-7. Moreover, the alleged victim cooperated with the investigation and conducted a consensual phone recording. Id. Notwithstanding this evidence, the district court found that, as a matter of law, the alleged victim could not be subject to 1983 liability. Id. at *14. The court found that cooperation with the police is not the same as conspiring with them. See id.

Like the court in Scott, the court finds that the record lacks evidence of a sufficient nexus between the state and Rafferty's conduct. The record is devoid of evidence that would allow a reasonable jury to find that Rafferty and Albanesi reached some form of agreement to deprive plaintiff of his constitutional rights. Scranton Police Department officials never ceded authority to Rafferty. Scranton Police Department officials never placed Rafferty in a position where she could substitute her own discretion and judgment for that of the police. In the absence of evidence of such a

31

nexus between Rafferty and the state, the court finds that Rafferty cannot be subject to section 1983 liability.  Accordingly, the court will grant Rafferty's summary judgment motion with respect to plaintiff's section 1983 claims.

## C.  Plaintiff's State Law Tort Claims

Plaintiff also alleges various state law claims against all defendants in Count II of his Complaint.  Plaintiff specifically alleges that the "conduct of all Defendants alleged in the above cause of action constitute false imprisonment, intentional infliction of emotional distress, interference with state and constitutional rights, negligence, gross negligence and negligence hiring, training, retention and supervision under the laws of the Commonwealth of Pennsylvania . . . ."  (Doc. 13, Am. Compl. ¶ 37).

In his brief in opposition to Scranton Defendants' instant motion, plaintiff "acquiesces to Summary Judgment on his state intentional tort claims against Defendant City of Scranton and Defendant Scranton Police Department."  (Doc. 55, Pl.'s Br. in Opp'n to Scranton Defs.' Mot. for Summ. J. at 17).  Accordingly, to the extent that the parties agree that summary judgement should be granted, the court will grant summary judgment in favor of Scranton Defendants.  The state law claims against the Scranton Police Department will be dismissed with prejudice.

With respect to the state law claims against Rafferty and Albanesi, the court declines to exercise supplemental jurisdiction. See 28 U.S.C. §

32

1367(c)(3).  The state law claims against Rafferty and Albanesi will be dismissed without prejudice to any right plaintiff may have to pursue them in state court.  In so holding, the court expresses no opinion as to the merits of any such claims.

**Conclusion**

For the reasons stated above, the court finds that no genuine issue of material fact exists with respect to plaintiff's section 1983 claims against Scranton Defendants and Rafferty.  The court will accordingly grant defendants' motions for summary judgment with respect to the federal law claims.  Additionally, the court will grant summary judgment with respect to the state law claims against Defendant Scranton Police Department.  The court declines to exercise supplemental jurisdiction over the remaining state law claims, which will be dismissed without prejudice.  An appropriate order follows.

# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

FRANK RODRIGUEZ,          :    No. 3:10cv2022
        **Plaintiff**       :
                         :    **(Judge Munley)**
     **v.**               :
                         :
SCRANTON POLICE DEPARTMENT, :
DETECTIVE DINA ALBANESI and  :
KELLY RAFFERTY,          :
        **Defendants**    :

# ORDER

**AND NOW**, to wit, this 4th day of January 2013, it is hereby

**ORDERED** as follows:

   1.  Defendant Scranton Police Department and Defendant Dina Albanesi's motion for summary judgment (Doc. 38) is **GRANTED**. The federal law claims contained in Count I of Plaintiff Frank Rodriguez's Amended Complaint are **DISMISSED WITH PREJUDICE** with respect to Defendant Scranton Police Department and Defendant Dina Albanesi.  The state law claims contained in Count II of Plaintiff Frank Rodriguez's Amended Complaint are **DISMISSED WITH PREJUDICE** with respect to Defendant Scranton Police Department.  The state law claims contained in Count II of Plaintiff Frank Rodriguez's Amended Complaint are **DISMISSED WITHOUT PREJUDICE** with respect to Defendant Dina Albanesi.

   2.  Defendant Kelly Rafferty's motion for summary judgment (Doc.

40) is **GRANTED**.  The federal law claims contained in Count I of Plaintiff Frank Rodriguez's Amended Complaint are **DISMISSED WITH PREJUDICE** with respect to Defendant Kelly Rafferty.  The state law claims contained in Count II of Plaintiff Frank Rodriguez's Amended Complaint are **DISMISSED WITHOUT PREJUDICE** with respect to Defendant Kelly Rafferty.

3.    The Clerk of Court is directed to enter judgment in favor of Defendants the Scranton Police Department, Dina Albanesi and Kelly Rafferty.

4.  The Clerk of Court is directed to **CLOSE** this case.


**BY THE COURT:**



**s/ James M. Munley**
**JUDGE JAMES M. MUNLEY**
**United States District Court**